We will now move to the next case on the calendar. Qeryaqos, if I'm pronouncing that right, v. Garland. And I believe both counsel are appearing by video. Mr. Sainz, is that you by video? No, this is Derek Poulsen. Okay, so Mr. Poulsen by video, Mr. Sainz is here. All right. So, Mr. Poulsen, how do you pronounce your client's name? Lawrence Qeryaqos. Qeryaqos. Okay, thank you. Counsel, each have 15 minutes. Mr. Poulsen, whenever you're ready. Thank you, Your Honor. May I please the court? My name is Derek Poulsen on behalf of the petitioner. With the court's permission, I would like to reserve three minutes for rebuttal. Thank you. In this case, there were several errors made by the BIA, specifically as to whether the petitioner's conviction rose to the level of a particularly serious crime, and second, whether he met his burden to qualify him for cap based on his fear of future persecution. To begin, I want to focus on the particularly serious crime aspect of the case. The BIA made legal error when they found the petitioner's criminal conviction rose to the level of a particularly serious crime. The BIA failed to fully and properly analyze petitioner's case under matter of YL to see whether the exception to the presumption of a particularly serious crime applied to petitioner. If he could demonstrate extraordinary and compelling circumstances to then overcome that presumption. The BIA completely disregarded the six criteria pointed out in matter of YL that at a minimum must be determined. In the BIA's decision, they simply adopted the IJ's findings. There was no analysis relating to the problems four through six. And regarding problem number one, the BIA simply stated the quantity of the substance, but did not identify whether or not that was a substantial amount. I'm sorry, the two and a half pounds, 2.4 pounds? Correct. Two and a half pounds of heroin, we don't get to take notice that two and a half pounds of heroin is not a very small quantity of controlled substance. Thank you. Thank you for that question, Hunter. Actually, in matter of YL, because I had that same question, right? So, I looked further in matter of YL. Matter of YL deals with three cases specifically. One of those being NRA-RSR. In that, and you can specifically find this in matter of YL, but it says that RSR pled guilty to participation in a conspiracy to produce cocaine in Puerto Rico and transport it in multi-kilogram quantities to then distribute in New York. So, one kilo, it equals 2.2 pounds of heroin. That's what it equals. So, in matter of RSR, this individual was carrying in more than what my client had, which was 2.48 pounds. The reason I bring up that is because… Did the Attorney General in that case decide that the 2.2 was not, was a very small quantity of cocaine? Well, it was. The Attorney General determined that the amount that RSR had did amount to a large quantity. But what I'm saying here is that… It did amount to a large quantity. So, the Attorney General found that 2.2 pounds was not a very small quantity of controlled substance. No, what I'm saying is that the Attorney General was looking at something that dealt with something significantly more than what my client had. My client had 2.48 pounds. In matter, or in RSR, there was at least 5 pounds that we're dealing with. It was multi-kilogram quantities. Counsel, do we have any idea what the street value of that heroin was? We don't. And they actually identified that in the IJ's decision that there was no amount of money or remuneration, any of that. And to go further to Judge Bivey's question, when the BIA issued its decision, they simply said that the IJ had found that he had in his possession 2.48 pounds of controlled substance heroin. Counsel, one of the things that the BIA says is that the burden to show these exceptions rests on your client. And although the IJ found that it was 2.4 pounds of heroin, there was no evidence regarding the amount of money involved, that this was all your burden to come forward and show these exceptions. Is the BIA wrong in its allocation of the burden? Well, Your Honor, I don't say that the BIA is wrong in this. What we are arguing is that, at a minimum, all six of those problems have to be addressed. Oh, all six of these have to be addressed? What do you mean have to be addressed? I thought that these were, at a minimum, you would have to show all six of these things. And failing to show one of them, the presumption then carries. This is your burden to meet these six, not the government's burden. That's what the BIA said. Is the BIA wrong in that? No, but if I can recall, your question is specifically relating to the amount. Is that correct? Well, that would just be one of the six. It looks like the BIA believes that 2.4 pounds of heroin is not a very small quantity of controlled substance because it found that these factual findings are not clear error. So you've got to show us that it's clear error or that the allocation of the burden as a legal matter is wrong. Well, going further into matter of while, it does state that only if all of these criteria were demonstrated by the alien, which I think goes to your point, Judge. So if you don't demonstrate one of them, it's over. Isn't that what the decision says? And if you haven't demonstrated the first one, the very small quantity, it seems to be over. What's wrong with that assessment? What we're arguing is that in the BIA's decision, they didn't address that at all. If you need all six and you don't get number one, what more do they need to address? What compels them to go on to anything else? Well, there was no argument. Well, there was nothing that they discussed to establish that 2.48 pounds of heroin did not meet that threshold. No, that's your burden, counsel. That's your burden to show that 2.4 pounds of heroin is de minimis. I don't know how you could possibly do that, but if you're going to try to get these, that's your burden, and that's what the BIA said. It said that you did not identify extraordinary and compelling circumstances, and then it lists three of those six items that your client failed to satisfy before the BIA. As I was indicating, Your Honor, in a matter of a while, once these six criteria have been established, and I understand, Your Honor, bear with me for just a moment here. Once they have been established, then it would be appropriate to consider whether the alien or whether there were other more unusual circumstances. For example, they point out this. Counsel, I don't mean to interrupt you. I think we have your argument on this point. You may want to move to your cat claim argument. Okay. Thank you, Your Honor. In arguing that the BIA failed to consider all the evidence for my client's cat claim, the regulations do state that all the evidence relevant to the possibility of future torture shall be considered, and our argument is that it was not. Did you make that argument to the BIA in the appellate brief? I'm sorry, can you repeat that? In the brief to the BIA, was that argument made that the IJ had failed to consider all the evidence, or was, in fact, the argument made something different? No, the argument was made that he had failed to consider all the evidence. And where was that argument made? Your Honor, are you looking for a specific line? Well, I looked at that brief. It mostly seems to be making a different argument that the IJ did not give Respondent, your client, in this context. Notice that further corroboration was needed. Now, toward the end, it says Respondent, your client, believes the immigration judge did not give enough weight to the evidence submitted, but I don't see anything that says the IJ failed to consider this particular piece of evidence that would demonstrate that my client is at risk, more likely than not, of suffering torture at the hands of or with the acquiescence of the government. I don't see where the BIA is told, look, the IJ didn't consider all the evidence, so you have to make sure you do or send it back to the IJ. I just don't see that argument in any place. And so if the BIA doesn't discuss all the evidence, I'm kind of not surprised based on the brief that was submitted. Well, under a due process analysis, your Honor, specifically in Garland v. Mean, so in Garland v. Mean, the U.S. Supreme Court held that if any reasonable adjudicator would be compelled to conclude the contrary of the IJ or the BIA based on the evidence in the record, then the finding is not supported by substantial evidence. But that's not the argument you actually presented to us in the opening brief. You haven't argued the common argument we get, that substantial evidence did not support that evidence compels a contrary conclusion. Instead, you've argued this due process point, that the problem is that the agency didn't consider all of the evidence, and so it has to be remanded so it will. And I'm asking you, where is the BIA told that's the argument? And so the BIA would reflect consideration of all the evidence. Because usually we don't expect a fact finder to cite and discuss all the evidence in the record. It's assumed that the fact finder does. And so I'm looking for where it is that the BIA is told the problem here is that the IJ didn't consider all the evidence. And that's not what I found in the brief. And I can't point to that right now, your Honor. I apologize about that. Okay, where in the brief is anything identified? This is the brief to the BIA, or for that matter, the brief to us. There is a string cite of, I don't know, 30 or 40 pages, but I didn't see anything discussed that says this is the evidence that turns the table. This is the evidence that demonstrates that my client is at risk of more likely than not suffering torture at the hands of or with the acquiescence of the government. What evidence is that? A string cite of 40 pages really doesn't help the BIA and doesn't really help me to figure out why the evidence should point to a different conclusion. So where is that evidence discussed? Okay. Okay. Okay. Okay. Okay. Counsel, go ahead. Go ahead. I believe, your Honor, that in the argument that we made, it was that the proceedings were so fundamentally unfair in the sense that the evidence that was provided, it should have established that he qualified for CAT. But it was completely overlooked. Okay. Counsel, what reports did the IJ fail to either, one, either consider, or two, to give the appropriate weight to? What's your best line in Human Rights Watch, in the Amnesty International, the State Department reports, that would establish that your client is likely to be subject to torture on his return to Iraq? For example, in that report of the 2016 report on international religious freedom, it says right at the very beginning, the first paragraph says, international human rights groups said the government failed to investigate and prosecute ethno-sectarian crimes, including those carried out by armed groups in areas liberated from ISIS. Okay. That is such a general statement. It just doesn't tell us anything. Your client is going to come in and claim that he's part of an ethno-sectarian group, and this entitles him to CAT protection? Well, in light of the fact that he came to the U.S. as a refugee, having fled from Iraq because of these threats, when he was being threatened to be cut into pieces and have his blood drank, in light of that testimony, which the IJ did find credible, along with these reports, taken together as a whole, which we argued that they were not, but taken as a whole, then he would meet that burden of qualifying for CAT. These reports are at a very, very high level of generality. They speak of Christian leaders. There are some references to Chaldean Catholics in here. But it's very difficult to see much detail in here that would tell us that he's got a very good chance of being tortured if he's returned. Is your argument that these reports are stale? No, my argument is that in light of the totality of the circumstances and the combined probability, particularly going back to how he came to the U.S., when taken as a whole, then it supports, it takes the generality of the articles, which I agree 100% that those are generalized, get that, but taken along with what he went through, which we believe was completely distorted. Well, what he went through did not include any physical harm to himself, did it? What, when he was in Iraq? That's my understanding. No, Your Honor, you're right. There was no physical harm. It was threats, but he didn't stick around to see whether or not ISIS was going to hold up to those threats. All right, counsel, your time is up. Did you have another question? We'll give you a couple of minutes for rebuttal. Thank you. Good morning, Your Honors. Rodolfo Saenz for the U.S. Attorney General. Counsel, you need to keep your voice up. My apologies. How's the volume now? That's better. Okay. This court should dismiss in part and deny in part Mr. Carriaco's petition for review for three reasons. He did not exhaust the challenge to the determination that he was ineligible for asylum, let alone that he was ineligible because his 2017 conviction for attempted possession of heroin for sale is an illicit trafficking aggravated felony. Does not seem to raise an argument here today about that. Second, he does not present any colorable legal or constitutional claims that would overcome the applicability of the criminal non-citizen jurisdiction bar for withholding. And even so, the agency acted within its broad discretion in determining that his 2017 conviction was presumptively a particular serious crime for withholding. And finally, substantial evidence supports the agency's determination that he's ineligible for CAT deferral because he failed to show the requisite likelihood of state action in Iraq. If I may, I'd like to begin with CAT deferral. The substantial evidence standard is a very high bar for a petitioner to meet in this case. Well, one of the things that's confused me about this case is the opening brief doesn't appear to make the argument to which you are currently responding or which the answering brief responded to. The focus of the opening brief appeared to be a due process violation that the agency did not consider all the evidence. And the relief sought under that would be a remand so the agency would consider all the evidence. Correct. The argument you're currently responding to suggests not that the agency have another whack at it, suggests that substantial evidence didn't support the agency's decision, and so, in effect, remand directing entry of CAT relief. I guess it'd be deferral of removal here. And so, you seem to have ships passing in the night a little bit. Do you have anything to say with regard to the argument that we've been talking about and that was made in the opening brief? Sure. In our brief, we didn't raise the exhaustion argument, but it is jurisdictional. It's within this court's discretion to reach that conclusion. But as you say, you never raised that argument. We did not discuss. And you took the opening brief as basically saying they didn't consider a lot of evidence in the record because you went exactly to that point, right? I'm sorry, Your Honor. You took their opening brief as saying here's this evidence that wasn't being considered and they looked at stuff like ISIS has been defeated, and that's the argument that you took them as making and that you addressed, right? Correct. But there are two prongs to CAT deferral. We are relying solely on the acquiescence claim. So that was included in the 28J letter that we filed two weeks back, but we believe there's not enough here to say that the board reviewed the likelihood of torture. Well, let me point you to something. So I believe it's at the record on 293-294 from the 2016 International Religious Freedom Report where it talks about ISIS pursuing a campaign of violence against members of all faiths and talking about how the U.N. assistance mission reported 5,400 casualties, 1,167 people killed, 4,236 wounded. That's pretty substantial, isn't it? Our position would be no, Your Honor. To begin, the report you are citing is a 2015 International Religious Freedom Report. There's also a 2016 report, but more than that, there are two. I was reading from what I see at the bottom of International Religious Freedom Report for 2016, but go ahead. Correct. I just double-checked. It's the 2015 report, if I'm not mistaken. Okay. Well, regardless, go ahead. The 2017 articles, though, that the DHS submitted as part of its packet all deal with conditions that were way after the 2015 IRLF. So what we have here, as the BIA found, is taking significant steps, the Iraqi government taking significant steps to address ISIS and its influence over others, and the violence that results. Including that it had defeated ISIS. That the government had declared that it had defeated ISIS. And it seemed like the IJ and the BIA both credited that. Yes, Your Honor. Okay. Is the position of the United States that the Iraqi government defeated ISIS? The position of the United States is that the government declared victory over ISIS. I understand the government declared it. My question is, is the position of the United States in fact that that declaration was true? I think that most we would be able to say what the government declared in Iraq. But it's not just the declaration about ISIS that is important here, Your Honors. It's also that there are anti-terrorism laws, arrests, and convictions of suspected terrorists, and that's in the 2017 Amnesty International report. So looking at this and the fact that they've taken back all of the territory from ISIS, this is a significantly different Iraq than in the 2015 international. But the petitioner worked for the United States, right? Correct. His father was murdered presumably by terrorists, right? The United States does not dispute that, right? I'm not sure it's that clear. Well, you don't dispute that his father was murdered. No. And the number of Christians in Iraq diminished by huge, huge quantities. Yes. And at least in the report that I was quoting, whichever year it was, there were more than 1,000 people killed by ISIS. And the United States, I take it, doesn't dispute that ISIS pursued a campaign of violence against members of all faiths. Presumably that would include Christians, right? Correct. Okay, go ahead. I think what matters here, though, is not that ISIS has been completely eradicated or that its violence is completely over. I think what matters here is the efficacy. Turning this back to the acquiescence state action prong, is the government of Iraq doing enough to combat those kinds of abuses? And the 2016 Department of State report noted, quote, overwhelming majority of serious human rights abuses are conducted by ISIS. Given that the government has declared victory, we are essentially also saying that the government is now engaged in efforts that have drastically reduced what is the primary human rights concern in Iraq. To the extent he argues that there are other sources, perhaps, Muslims engaging in crimes, we, again, have the government engaging in arrests, albeit imperfectly. General ineffectiveness is not enough here. And we're looking at the substantial evidence standard. That means that we have to find, there has to be compelled to conclude a different conclusion. Contrary evidence is not enough. Does the government dispute that people who, in Iraq, assisted the United States government are targets of terrorists?  So does the government agree that those who assisted the U.S. military in Iraq, if they're still in Iraq and are Christians, are targets of terrorists? No, Your Honor, because there's absolutely no evidence in the at least country conditions reports of affiliates with the U.S. government being targeted by harm for ISIS. The only evidence that we have is petitioner's testimony about what occurred to him in the past, years before any of this country conditions evidence. So there is nothing in the record to support the conclusion that they are engaged in some sort of targeting of U.S. affiliates. And even so, what matters here is the efficacy of the government's efforts to engage with the human rights abuses it sees before it. And there is a number of, for the reasons I've already stated, there's plenty to show here that the government is doing enough. And that's very similar to the Garcia Millon case, where there were efforts being made perhaps to prosecute individuals. There was a special tribunal put in place to address harm against women. Here, similarly, we have some prosecutions taking place. We have an anti-terrorism law. And similarly, in the Hernandez case, just because the BIA doesn't cite every single report does not mean that it has to. And the reason is because disagreeing with the weight is not the same thing as ignoring or misstating the evidence here. And the board acknowledged that there were harsh conditions in Iraq still. It said, quote, there are certainly problems in Iraq illustrated by the HR report and by the attorney of the record submission. That's actually, sorry, my apologies, that's the immigration judge at AR-65. But again, ineffectiveness is insufficient to meet the standard here. I believe that's it for the government, if there are no further questions on cap deferral. And thanks, Your Honors. All right. Council, we'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honor. So in the country report, as opposing counsel was talking, I was looking up the 2016 report further, and it does say towards the end, it says the U.S. president in his speech, and this is from the 2016 report, it says the U.S. president in a speech at the U.N. called on the country's political, civic, and religious leaders to take concrete steps to address the danger possessed by or opposed by religiously motivated extremists. I would just argue, Your Honor, that as you had mentioned too in the beginning of opposing counsel's argument, the government in Iraq had claimed to have thwarted ISIS. But whether they've done so or whether they've just said so are two totally different things. And from what the government, what the U.S. president said, it would appear that they have not taken the concrete steps to do that. Counsel, if we remanded this to the BIA, what should the BIA do? Is it just going to go over the 2016 reports one more time? Does the record need to be refreshed so that we know what's currently going on? That feels like a little bit of a never-ending cycle. This court is always going to be behind on these things. So that's a little bit tough. But what is it that you envision happening? What are you asking for? We would argue that if it is remanded back to the BIA, they should at least take into consideration the 2016 report along with his testimony, which we believe that they were not taken together. And because of that, there is... And his testimony in Iraq, he leaves Iraq in what, 2007? 2010. Oh, 2010. Yeah. 2007 is when the threats began. All right. Thank you, counsel. We thank both counsel for their arguments. The case just argued will be submitted.
judges: CLIFTON, BYBEE, BENNETT